Eve SCHULTZ, by her father,
John H. Schultz

v.

GOULD ACADEMY.

Supreme Judicial Court of Maine.

Feb. 20, 1975.

Theodore H. Kurtz, South Paris, Drummond, Wescott & Woodsum by John A. Graustein, Portland, for plaintiff.

Preti & Flaherty by John J. Flaherty, John Paul Erler, Portland, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

POMEROY, Justice.

In the early morning hours of April 16, 1971, the plaintiff, a sixteen-year old student at the defendant Academy, was criminally assaulted by an unidentified intruder who had come into her dormitory room while she was sleeping.

That this is so is not in issue.

Seasonably thereafter action was commenced against the Academy based on plaintiff's claim that there was a legal duty on the part of the Academy to foresee and guard against the misfortune which befell her, and that the Academy failed to perform its legal duty, and was, therefore, negligent.

After issue was joined the action was heard with a jury sitting as factfinder. A verdict in favor of the plaintiff resulted.

Well within the time stipulated by Rule 50(b), M.R.Civ.P., a motion for judgment n. o. v. was addressed to the Justice presiding at the trial. His favorable action on the motion occasioned this appeal.

We are here required to determine the correctness of the action taken by the presiding Justice in setting aside the jury verdict and entering judgment for the defendant *non obstante veredicto*.

We conclude the verdict of the jury should not have been set aside and we sustain the appeal.

In reaching this conclusion we are conscious that

" . . . we must view the evidence, 'including every justifiable inference,' in the light most favorable to the plaintiff so that we may decide whether by any reasonable view of this evidence a jury verdict for the plaintiff could be sustained." Boetsch v. Rockland Jaycees, Me., 288 A.2d 102, 104 (1972).[1]

The evidence presented was sufficient to warrant a rational jury in finding the following facts:

The night watchman for the defendant Academy arrived at the plaintiff's dormitory at approximately 3:15–3:20 a. m. on his routine check of the campus buildings. He noticed large footprints in newly fallen snow which led around the dormitory, up to locked doors on the east and north sides of the building, and up to a rear kitchen door. No footprints leading away from the building were observed at that time. The kitchen door was situated just beneath a low overhang or roof which was bounded by a second floor window that was screened but unlocked. The watchman had noticed nothing unusual on his rounds earlier in the evening. Entering the dormitory through the kitchen door, he stopped at his first station which was immediately beneath the window overlooking the roof. While punching the station key, he noticed tracks on the roof outside the window.[2]

Observing water on the stairway leading to the dormitory basement, he proceeded to investigate the basement storage area, checking all storerooms more carefully than he usually did. A stairwell led from the basement to the upper floors of the dormitory, but the watchman limited his search to the storage rooms.[3]

1. The same test is used to review a directed verdict and judgment n. o. v. Manchester v. Dugan, Me., 247 A.2d 827, 828 (1968).

2. The investigating police officer testified the watchman told him he saw footprints on the ledge. The watchman claimed he made no observations out the window, at that time.

The trial Justice found as a fact that the watchman "discovered some water on the floor *under the window*," just after punching in at the station.

3. The headmaster testified that the watchman was not permitted to go on the dormitory floors, and that such rule was in effect at

The additional minutes spent searching the basement area delayed the watchman's usual time of departure from the building. The jury would have been justified in concluding from his own testimony on cross-examination that it was 3:40 or 3:45 a. m. before he left to continue his rounds.

Plaintiff was unable to fix the exact time when the intruder entered her room, although she believed he was there a total of 25–30 minutes. She left about a minute after he did, going directly to the room of a friend on the floor below. Aroused by plaintiff's knock on her door, the friend observed the time on her bedside clock to be 4:20 a. m. After 10 minutes of conversation, the two girls went downstairs to awaken the housemother. In her report to the State Detective the housemother set the time of the girls' arrival at her door at 4:30 a. m.

Based upon these facts, the jury was justified in concluding that at 3:15 or 3:20 a. m. defendant's night watchman had reason to believe a male intruder had entered the girls' dormitory, that he had been in a basement area which allowed access to the upper floor sleeping quarters, and that he had not yet left the building. Moreover, the jury could conclude that for a period of 10 or 15 minutes (at the very least), both defendant's night watchman and plaintiff's attacker were inside the building; and that the harm sustained by plaintiff *had not yet occurred* when the watchman left the building to continue on his rounds.[4]

■ Plaintiff, as a student attending the defendant Academy, had the legal status of a business invitee, to whom defendant's employee owed a duty to exercise reasonable care in taking such measures as were reasonably necessary for her safety in light of all then existing circumstances. Isaacson v. Husson College, Me., 297 A.2d 98, 103 (1972); Jay v. Walla Walla College, 53 Wash.2d 590, 335 P.2d 458 (1959).

The jury could infer from the evidence that defendant's employee

(1) had notice of circumstances highly suggestive of an improper intrusion into the dormitory by someone, and

(2) reasonable opportunity to take some action or give some warning to prevent any harm to the girls which reasonably could be expected to flow from such intrusion.

Whether the harm that befell plaintiff was within "the range of reasonable apprehension" was a question of fact for the jury. Hatch v. Globe Laundry Co., 132 Me. 379, 171 A. 387 (1934).

If, in fact, it was reasonably to be apprehended, failure to use due care to guard against it, was actionable negligence. Palsgraf v. Long Island R. R. Co., 248 N.Y. 339, 162 N.E. 99 (1928).

■ That defendant's employee could not have foreseen the exact nature of the injury which in fact occurred, does not relieve him of liability, if some harm was reasonably foreseeable under the circumstances. Quinn v. Moore, Me., 292 A.2d 846 (1972).

This is true even though a wilful or negligent or criminal act by a third person intervened and contributed to the harm. Hawkins v. Maine & New Hampshire Theaters Co., 132 Me. 1, 164 A. 628 (1933); Kimple v. Foster, 205 Kan. 415, 469 P.2d 281 (1970).

In *Hawkins,* supra, this Court held that the liability of a theater manager turned

---

the time of the incident. Accordingly, the watchman could not be faulted for not having continued his search on the upper floors. The jury could have concluded, however, that under the circumstances, he should have alerted someone who was authorized to be in the girls' quarters, of the potential danger.

4. The combined testimony of plaintiff as to the duration of the attack (25–30 minutes), and plaintiff's friend as to the time she was aroused, only moments thereafter (4:20 a. m.), if believed, would place the time the attacker *entered* plaintiff's room at approximately 3:50 a. m.

on whether the injury sustained by a patron, although inflicted by the wilful and malicious act of a third person, should reasonably have been foreseen and averted.

"The obligation which the proprietor of a theatre or amusement enterprise owes to his guests has been clearly set forth. He must guard them not only against dangers of which he has actual knowledge but also against those which he should reasonably anticipate. Morrison v. Union Park Association, 129 Me. 88, 149 A. 804 (1930). The failure to carry out such duty is negligence. A recovery may be had, even though the wilful or negligent act of a third person intervenes and contributes to the injury, provided such act should have been foreseen." 164 A. at 629.

The same rule has been applied with respect to the liability of a laundry for injuries sustained by one attempting to rescue children caught in a runaway truck negligently parked on a steep grade by the laundry's employee. (Hatch v. Globe Laundry Co., supra.)

"The question whether or not negligence is a proximate cause of an injury is answered, not as a rule by determining that the act of a third person contributing to the result does or does not intervene, but rather by deciding whether the occurrence should have been foreseen or reasonably anticipated." 171 A. at 390.

In Brewer v. Roosevelt Motor Lodge, Me., 295 A.2d 647 (1972), a female guest brought action against the defendant motel for injuries sustained when she was assaulted by an intruder who gained entrance to her ground floor room through an open bathroom window. We held that, under the circumstances of that case, a verdict was properly directed for defendant.

That case is clearly distinguishable from the one now before us.

In *Brewer,* although the motel provided its guests with adequate locking devices on all windows and doors, and operating air conditioners capable of removing bathroom steam, the plaintiff herself elected to unlock and raise the bathroom window to clear the air after a bath, eschewing the measures provided by the motel for that very purpose.

In the instant case, however, the jury could properly infer that the school watchman, with reasonable time to act, became aware that a male intruder was in the girls' dormitory when he saw footprints leading up to, but not away from, the building.

Having resolved that the law of Maine is that the owner of premises owes a legal duty to his business invitees to protect them from those dangers reasonably to be foreseen, it is clear that if the harm sustained by the plaintiff (regardless of the agent or means by which it directly resulted) *should have been anticipated and guarded against,* the watchman's failure to so do constituted a breach of his legal obligations.

In other words, if an assault on one of the girls was a danger reasonably to be foreseen in light of the evidence of an unwarranted intrusion into their quarters, the watchman's failure to exercise reasonable care to deter or prevent such a happening renders his employer answerable in damages therefor.

Each case must turn on its own facts.

Defendant Academy is a boarding school for young boys and girls situated within the environs of a small town. As such it must assume the dual role of teacher and family to its students, providing them not only with instruction in the usual and prescribed academic courses, but also with the kind of environment that fosters their emotional and physical well-being.

It was undoubtedly for this very reason the defendant employed a watchman to make numerous rounds of the campus each night to insure that all buildings were properly secured, and to warn of anything which might imperil their residents.

In the posture of the evidence presented, the jury was warranted in concluding that, forewarned by furtive and intrusive movements in and around the girls' dormitory, a reasonably prudent man, charged with the protection of the dormitory's young female residents would have taken some measures to avert the likelihood that one (or more) of them would be physically harmed.

The jury could reasonably conclude that the failure of the watchman to do so was a violation of a duty owed the plaintiff, and such violation was a proximate cause of her injuries.

We cannot say as a matter of law that no reasonable view of this evidence seen in the light most favorable to the plaintiff would allow recovery.

Defendant challenges only its liability on this appeal. It raises no issue with respect to the amount of damages awarded by the jury. Our review is limited to the propriety of the action taken by the presiding Justice in setting aside the jury verdict and ordering judgment notwithstanding the verdict.

We find the order of the Justice to be error.

Pursuant to Rule 50(c), M.R.Civ.P., the entry must be,

Appeal sustained. Verdict reinstated and judgment thereon directed.

DELAHANTY, J., did not sit.