STATE OF MAINE                                          SUPERIOR COURT

Sagadahoc, ss.

TRACY & MICHAEL LAURENCE,
as parents and next friends of J.L.,
a minor,
                    Plaintiffs

        v.                                      Docket No.   BATSC-CV-07-062

HOWARD SPORTS-TOPSHAM, INC.

                    Defendant

## DECISION AND ORDER

This matter comes before the court on the defendants' motion for

summary judgment.  Oral argument in this case and two other cases involving

similar claims against the same defendants was held May 5, 2009.

## BACKGROUND AND PROCEDURAL HISTORY

This case arises out of the sexual assault of the plaintiffs Tracy and

Michael Laurence's (the Laurences) child, J.L., at the defendant Howard Sports-

Topsham, Inc.'s (Howard Sports-Topsham) childcare facility (the Childcare

Facility).  The Laurences filed an amended complaint against defendant Howard

Sports, Inc. on November 27, 2007, alleging negligence (Count I); negligent

infliction of emotional distress (Count II); intentional infliction of emotional

distress (Count III); negligent supervision (Count IV); and vicarious liability

(Count V).  The amended complaint also seeks punitive damages.  On July 16,

2008, the plaintiffs filed an unopposed second motion to amend to also include

Howard Sports-Topsham as a defendant in this action.

The material facts of this matter may be summarized as follows. Howard Sports-Topsham formerly operated the Childcare Facility at its sports facility in Topsham, Maine. During the summer of 2004, the Laurences' son J.L., who was five-years-old at the time, was enrolled at the Childcare Facility. Matt Barrington (Barrington), a fourteen-year-old boy, also attended the Childcare Facility at that time. The Laurences allege that on multiple occasions Barrington forced J.L. to engage in sexual activity with him in the bathroom at the sports facility. Barrington allegedly touched other children at the Childcare Facility inappropriately, and was involved in an incident in 2004 in which he smeared his own feces on the walls in the bathroom of the Childcare Facility.

As a result of allegations concerning Barrington's behavior at the Childcare Facility, the Department of Health and Human Services (DHHS), investigated the facility for possible violations of the DHHS rules and regulations governing the operation of licensed childcare facilities. Following the investigation, DHHS cited Howard Sports for several licensing violations, including the lack of appropriate supervision given the number of children enrolled, enrolling a fourteen-year-old (Barrington) when the age range was capped at twelve years of age, failing to provide adequate records of injuries and incidents, and employing two staff members with criminal convictions. Subsequently, the Childcare Facility terminated Barrington from the Childcare Facility.

The defendants filed a motion for summary judgment on October 31, 2008. The Laurences filed opposition thereto as to Howard Sports-Topsham. They did not oppose summary judgment as to defendant Howard Sports, Inc. acknowledging that Howard Sports, Inc. is not a proper party to this litigation.

2

Thus, summary judgment is appropriate as to Howard Sports, Inc. and the following discussion pertains only to defendant Howard Sports-Topsham.

Howard Sports-Topsham's motion for summary judgment presents the following argument. The defendant argues that because there is no evidence that they knew or should have known that Barrington posed a risk of sexual misbehavior, the negligence and negligent infliction claims should fail. The defendant also contends that summary judgment is appropriate as to Count III for intentional infliction of emotional distress because there is no evidence that their conduct was sufficiently outrageous. In addition, it is the defendant's contention that the evidence does not demonstrate the malice required to support a punitive damages claim. Finally, the defendant argues that a vicarious liability claim is inappropriate because they did not employ Barrington at the Childcare Facility.

## DISCUSSION

### I. Standard of Review

Summary judgment is proper where there exist no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653, 655. A genuine issue is raised "when sufficient evidence requires a fact-finder to choose between competing versions of the truth at trial." *Parrish v. Wright*, 2003 ME 90, ¶ 8, 828 A.2d 778, 781. A material fact is a fact that has "the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575. "If material facts are disputed, the dispute must be resolved through fact-finding." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 22. A party wishing to avoid summary judgment must present a prima facie case for

the claim or defense that is asserted. *Reliance National Indemnity v. Knowles Industrial Services,* 2005 ME 29, ¶ 9, 868 A.2d 220, 224-25. At this stage, the facts are reviewed "in the light most favorable to the nonmoving party." *Lightfoot v. Sch. Admin. Dist. No. 35,* 2003 ME 24, ¶ 6, 816 A.2d 63, 65. A party opposing a motion for summary judgment may not create an issue of material fact to defeat summary judgment by submitting an affidavit disputing that party's own prior sworn statement that the proponent of the motion offers to support the motion. *See Zip Lube, Inc. v. Coastal Sav. Bank,* 1998 ME 81, ¶ 10, 709 A.2d 733, 735.

## II.    Negligence

A prima facie case of negligence requires a plaintiff to establish that a duty of care is owed, there was a breach of that duty, and that an injury to the plaintiff occurred that was proximately caused by the breach of duty. *Bonin v. Crepeau,* 2005 ME 59, ¶ 9, 873 A.2d 346, 348.

### A. Duty of Care

Although the fact that a duty existed in this case is not disputed, the parties do disagree as to the duty applicable to childcare providers. The defendant contends that the Childcare Facility had the duty of one who stands in the shoes of a parent. In *Merchant v. Mansir,* 572 A.2d 493, 493-94 (Me. 1990), the Law Court adopted a standard of care for parental liability for the torts of their children impressing a duty on parents to "exercise reasonable care so to control" their minor children.[1] The plaintiffs counter that a duty founded on premises liability duty exists between the Childcare Facility staff members and the

---

[1] A parent has a duty to "exercise reasonable care so to control his minor child as to prevent it . . . from so conducting itself as to create an unreasonable risk of bodily harm to [others], if the parent (a) knows or has reason to know that he has the ability to control his child, and (b) knows or should know of the necessity and opportunity for exercising such control." *Merchant,* 572 A.2d at 494.

4

children who attend. The plaintiffs also assert that a specific duty is imposed on the defendants by Maine law as a licensed childcare facility based on the DHHS rules and regulations.

At a minimum, premises liability is applicable because the defendant provides a service to the public and the children who attend are invited onto the premises. Under Maine law, the owner of the premises "owes a legal duty to his business invitees to protect them from those dangers reasonably to be foreseen." *Schultz v. Gould Acad.*, 332 A.2d 368, 371 (Me. 1975). Although the Law Court has not addressed whether premises liability applies to childcare facilities, the Court has held that such a duty exists between a student and an educational institution. *Schultz*, 332 A.2d at 370 (citing *Isaacson v. Husson College*, 297 A.2d 98, 103 (Me. 1972). In *Stanton v. University of Maine System*, the University owed a duty to a student to protect a student against sexual assault when she was in her dormitory room on the college campus. *Stanton v. Univ. of Maine Sys.*, 2001 ME 96, ¶ 10, 773 A.2d 1045, 1050.

The court is also free to consider state regulations among the factors to be weighed in deciding whether a legal duty existed. *Binette v. Dyer Library Ass'n*, 688 A.2d 898, 904. (Me. 1996). The DHHS rules require that each child in a licensed childcare facility be free from mental, verbal, physical and/or sexual abuse, neglect and exploitation. *See* 22 M.R.S.A. § 8301-A; 10-148 CMR § 10.1. The defendant assumed the reasonable duty to keep the children in its care safe and free from assault and injury while at the Childcare Facility.

**B. Breach of Duty**

The defendant argues that it did not breach its duty and therefore, was not negligent. The defendant asserts that there is no evidence that they knew or

should have known that Barrington posed a risk of sexual misbehavior. However, in determining what constitutes the breach of a duty, the proper inquiry "is not to decide whether a particular plaintiff's injury was reasonably foreseeable in light of a particular defendant's conduct." *Cameron v. Pepin*, 610 A.2d 279, 282 (Me. 1992) (quoting *Ballard v. Uribe*, 715 P.2d 624, 628 n.6 (1986)). Instead the proper analysis involves a more general evaluation of "whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party." *Id.*

In *Stanton*, the Law Court held that the University had a general duty to protect dormitory residents from sexual assault. 2001 ME 96, ¶ 10, 773 A.2d 1045, 1050. The Court reasoned that the occurrence of sexual assault in a dormitory room is foreseeable as evidenced in part by the security measures that the University had implemented. *Id.* Foreseeability was not dependent upon evidence of prior criminal acts. *Id.* Rather, the precautions taken by the University to protect students against criminal activities indicated that criminal activities were foreseeable. *Id.*

As was the case in *Stanton*, the Childcare Facility assumed the duty to keep those under its care safe, and the risk of assault was reasonably foreseeable. The court can safely assume that the staff at the Childcare Facility knew or should have known that children may be at risk for sexual assault from adults and other children, and that education, training, and publications for its staff and managers was available through a variety of sources on this topic.

Furthermore, the DHHS rules require that "each child, during indoor and outdoor times, shall be supervised by a childcare staff member who is aware of

6

and responsible for the ongoing activity of each child and who is near enough to the child to intervene when needed." 10-148 CMR § 13.2.1. Based on the statements of material facts, the director of the Childcare Facility in 2004 acknowledges that she was familiar with these rules and one of her main responsibilities was to keep the children in the Childcare Facility safe. Nonetheless, the Childcare Facility was found in violation of the DHHS rules, relating in part to inadequate supervision. Violation of a safety statute constitutes evidence of a breach of a duty of reasonable care owed to those the statute is designed to protect. *Binette*, 688 A.2d at 904. The statutes and rules regulating childcare facilities are meant to protect the children at those facilities.

Regardless, it is not for the court to decide whether the defendant breached its duty at the summary judgment stage. The existence of a duty of care is a question of law, while issues of the breach of a duty of care or negligence are usually questions of fact. *Cf. Radley v. Fish*, 2004 ME 87, ¶ 6, 856 A.2d 1196, 1198-99; *Mastriano v. Blyer*, 2001 ME 134, ¶¶ 11-12, 779 A.2d 951, 954. The plaintiffs have presented evidence of a breach of duty pertaining to inadequate supervision at the Childcare Facility. Because the Laurences have generated a genuine issue of material fact as to breach of duty, the defendant Howard Sports-Topsham's motion for summary judgment on the negligence claim should fail.

### III. Intentional Infliction of Emotional Distress

To succeed in an action for intentional infliction of emotional distress (IIED), a plaintiff must demonstrate that: (1) the defendant engaged in intentional or reckless conduct that inflicted serious emotional distress or would be substantially certain to result in serious emotional distress; (2) the defendant's

conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable; and (3) the plaintiff suffered serious emotional distress as a result of the defendant's conduct. *Champagne v. Mid-Maine Med. Ctr.*, 1998 ME 87, P15, 711 A.2d 842, 847; *Henriksen v. Cameron*, 622 A.2d 1135, 1139 (Me. 1993).

Here, the Laurences do not allege that the defendant intentionally inflicted emotional distress, but instead, that it did so recklessly. A person acts recklessly if she knows or should know that her conduct creates an unreasonable risk of harm to another person and the unreasonableness of her actions exceeds negligence. *Curtis v. Porter*, 2001 ME 158, ¶ 13, 784 A.2d 18, 23.

The defendant argues that it did not know, nor should have known, the risk Barrington posed to other children. Whether or not the defendant acted recklessly is a factual question. The defendant's better argument for purposes of summary judgment is its claim that the allegations do not rise to the level of being "extreme and outrageous" as required for an IIED claim. It is "for the court to determine, in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous to permit recovery, or whether it is necessarily so." RESTATEMENT (SECOND) OF TORTS, § 46 cmt. h, at 77 (1965). Where reasonable minds may differ, it is for the fact-finder to determine whether the conduct has been sufficiently extreme and outrageous to result in liability. *Id.*

The conduct alleged here—essentially a child care provider's allegedly reckless decision not to hire staff—even if proven as alleged, is not conduct "so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community." *Champagne v.*

8

*Mid-Maine Med. Ctr.*, 1998 ME 87, ¶ 15, 711 A.2d 842, 847; (quotation marks omitted).

Businesses make decisions every day in which cost is weighed against safety, and sometimes those decisions prove wrong. If the business decides against a safety measure, knowing full well that its decision will likely result in more of its customers being injured or dying, as in the famous Ford Pinto cases, then imposition of liability for IIED and punitive damages might be justified. Here, however, there is no evidence that the Defendant had knowledge that its staffing decisions would result in children being sexually assaulted. There is a better argument that it should have anticipated that possibility, and that is why the negligence claim survives.

Based on the statements of material facts, the facts presented do not rise to the level of "extreme and outrageous" behavior as a matter of law and are insufficient to support the claim for IIED.

## IV. Negligent Infliction of Emotional Distress

For the defendant's actions to give rise to liability for negligent infliction of emotional distress, the Childcare Facility must (1) have owed a duty to the child; (2) breached that duty; (3) the child was harmed; and (4) the breach caused the child's harm. *Curtis*, 2001 ME 158, ¶ 18, 784 A.2d at 25.

The Law Court has expressly declined to apply a pure foreseeability analysis to determine whether a duty to avoid negligently causing emotional harm exists. *Bryan R.*, 1999 ME 144, ¶ 31, 738 A.2d at 848; *Cameron v. Pepin*, 610 A.2d 279, 282 (Me. 1992). Although each person has a duty to act reasonably to avoid causing physical harm to others, there is no analogous general duty to avoid negligently causing emotional harm to others. *Curtis*, 2001 ME 158, ¶ 18,

784 A.2d at 25. However, a duty does exist to act reasonably to avoid emotional harm to others in very limited circumstances: first, in claims commonly referred to as bystander liability actions; and second, in circumstances in which a special relationship exists between the actor and the person emotionally harmed. *Curtis*, 2001 ME 158, ¶ 18, 784 A.2d at 25.

The allegations in the plaintiffs' claim do not involve bystander liability but instead are based on a special relationship between J.L. and the Childcare Facility staff members. When a "special relationship" exists, an "actor [may] be found to have a common law duty to prevent harm to another caused by a third party." *Fortin v. Roman Catholic Bishop of Portland*, 2005 ME 57, ¶ 871 A.2d 1208, (quoting *Bryan R. v. Watchtower Bible & Tract Society of New York, Inc.*, 1999 ME 144, ¶ 14, 738 A.2d 839, 845); see also *Korhonen v. Allstate Ins. Co.*, 2003 ME 77, ¶ 12 n.4, 827 A.2d 833, 837 (discussing RESTATEMENT (SECOND) OF TORTS § 324(a) cmt. b (1965)), which recognizes the duty of "one who takes charge of another who by reason of his youth is incapable of caring for himself").

Because the Plaintiffs have presented sufficient evidence that a special relationship did exist between the children at the Childcare Facility and the staff members entrusted with their care, the claim for NIED survives the defendants' motion for summary judgment.

## V. Negligent Supervision

If a plaintiff asserts the existence of facts that, if proven, establish a special relationship with a defendant in accordance with section 315(b) of the RESTATEMENT (SECOND) OF TORTS,[2] an action may be maintained against the

---

[2] Section 315 provides:

defendant for negligent supervision liability in accordance with section 317 of the Restatement.[3] *Fortin v. Roman Catholic Bishop of Portland*, 2005 ME 57, ¶ 39, 871 A.2d 1208, 1222. Section 317 provides for a duty in a master-servant relationship, RESTATEMENT (SECOND) OF TORTS § 317, and so does not apply here. Negligent supervision is generally considered in the context of the duty an employer might owe for the conduct of an employee, and is a duty that the Law Court has not previously recognized. *Fortin*, 2005 ME 57, ¶ 19, 871 A.2d at 1215-16.

In recognition that the law does not support their claim, the Plaintiffs acknowledged at oral argument that their negligent supervision claim should be dismissed.

### Vicarious Liability

---

There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless

(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

(b) a special relation exists between the actor and the other which gives to the other a right to protection.

[3] Section 317 defines the duty of the master to control the conduct of his servant:

A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if

(a) the servant

(i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
(ii) is using a chattel of the master, and

(b) the master

(i) knows or has reason to know that he has the ability to control his servant, and
(ii) knows or should know of the necessity and opportunity for exercising such control.

Maine applies the RESTATEMENT (SECOND) OF AGENCY to determine the limits of imposing vicarious liability on an employer. *Mahar v. StoneWood Transp.*, 2003 ME 63, ¶ 14, 823 A.2d 540, 544. Specifically, section 228 of the Restatement provides that a master may be vicariously liable for the actions of its agent when the agent's conduct was within the "scope of employment." RESTATEMENT (SECOND) OF AGENCY § 228. The plaintiffs do not oppose the defendants' motion to dismiss the vicarious liability claim because they acknowledge that the defendants did not employ Barrington.

## VI. Punitive Damages

To award punitive damages, a court must find, by clear and convincing evidence, that malice existed. *Morgan v. Kooistra*, 2008 ME 26, ¶ 29, 941 A.2d 447, 455; *Tuttle v. Raymond*, 494 A.2d 1353, 1363 (Me. 1985). Malice is proven by evidence that a party acted with ill will toward the plaintiff or that the conduct was so outrageous that malice can be implied; it is not established by a "mere reckless disregard of the circumstances." *Tuttle*, 494 A.2d at 1361.

Viewing the facts in the light most favorable to the plaintiffs, they have not demonstrated that the Childcare Facility acted with malice, actual or implied. There is no evidence of actual malice or ill will. As to implied malice, the reasoning is similar to that with regard to Count III for IIED: the defendant's alleged conduct must be so outrageous that ill will can be implied. Even if the defendant was negligent or reckless in its lack of supervision of the children, its conduct was not so outrageous as to enable the reasonable factfinder to imply malice for purposes of punitive damages.

## CONCLUSION

1. The defendant Howard Sports, Inc.'s motion for summary judgment is GRANTED without objection. Howard Sports, Inc. is hereby dismissed as a defendant.

2. The defendant Howard Sports-Topsham, Inc.'s motion for summary judgment on the claims for intentional infliction of emotional distress (Count III), negligent supervision (Count IV), vicarious liability (Count V), and punitive damages is GRANTED. As to Counts IV and V only, the order is without objection.

3. The defendant Howard Sports-Topsham, Inc.'s motion for summary judgment on the claims for negligence (Count I) and negligent infliction of emotional distress (Count II) is DENIED.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Decision and Order by reference in the docket.

Dated May 5, 2009

Justice, Superior Court