ALEXANDER, J.,
eoncurring/dissenting.
■ [¶30] The Court has thoroughly researched the law and presented the facts of this case. I concur with the Court that we must vacate the trial court’s judgment. However, based on the facts and conclusions stated in the Court’s opinion, and the law the Court’s opinion cites, I must respectfully dissent from the Court’s holdings that only a premises liability claim against Delta Tau Delta (DTD) should proceed to trial and that the Delta Tau Delta National Housing Corporation (DTDNHC), the owner of the building, should be dismissed from-the case entirely. Because important disputes as to material facts remain, the premises liability, negligence, and" negligent infliction of emotional distress claims against DTD and DTDNHC should be left for a jury to decide.
I. RELEVANT FACTS
[¶ 31] Foreseeability is one of the touchstones for attaching legal liability. Stanton v. Univ. of Me. Sys., 2001 ME 96, ¶¶ 8, 10, 773 A.2d 1045. As the Court’s opinion recognizes, sexual assault on college and university campuses is, unfortunately, a foreseeable event. To begin the discussion, it is important to quote the facts and conclusions stated in the Court’s opinion that, in my view, support the conclusion that a jury should be allowed to decide the claims against both defendants.
*797 (1) “A national fraternity knows, or should know, that social events carried on in a building that houses one of its local chapters presents the potential for sexual assault, particularly where alcohol consumption is an integral part of the event.” Court’s Opinion ¶ 15.
(2) “It is similarly foreseeable that allowing a group of eighteen-to-twenty-year-olds control over a residence where alcohol-related parties are held presents the potential for misconduct, including sexual assault.” Court’s Opinion ¶ 15.
(3) “[I]t is certainly foreseeable that turning a fraternity house over to college students, where parties and alcohol-related events are likely to occur, creates the potential for sexual misconduct — a known safety issue on college campuses.” Court’s Opinion ¶ 28.
(4) “DTD effectively handed over a residential building to a group of college students, and in doing so it should have anticipated that alcohol-related parties on the premises would follow, as could the social problems that accompany such activities. It therefore had a duty to exercise reasonable care in providing a reasonably safe environment for any social invitee to an event at the fraternity house.” Court’s Opinion ¶ 27.
(5) “Imposing upon a national fraternity that integrates itself into'its local chapter and onto a college campus a duty to take reasonable steps to protect the safety of social invitees at its fraternity house is no more onerous or unexpected than the duty society imposes upon a university to exercise care in the administration of its dormitories.” Court’s Opinion ¶ 27.
(6) “DTD had the authority to control its individual members, and actually did so through implementation and enforcement of its rules and regulations. DTD also had a close, integrated relationship with Gamma Nu, as demonstrated by DTD’s corporate structure.” Court’s Opinion II28.
(7) “DTD had a duty to exercise reasonable care and take reasonable steps to provide premises that are reasonably safe and reasonably free from the potential of sexual misconduct by its members, for all social invitees to chapter-sponsored events.” Court’s ' Opinion ¶ 29. '
(8) “DTD is a national non-profit corporation organized in New York and doing business in Indiana; Gamma Nu is its local chapter at UMO.” Court’s Opinion ¶ 5.
(9) “DTDNHC is an Indiana nonprofit corporation that, holds property for DTD and leases the fraternity house to Gamma Nu.” Court’s Opinion ¶ 5.
(10) “Because the fraternity’s local chapter is an unincorporated association of undergraduate students, it is not 'susceptible to being sued in its own name, though its individual members are amenable to suit for their individual negligent conduct.” Court’s Opinion ¶ 1 n. 1.
(11) “The same elements by which DTD controls its members — its chain of command, its articulation and imposition of its code of conduct, and its process for disciplining members who do .not comply with its rules — also establish a close relationship between the national fraternity and its local chapters and individual members.” Court’s Opinion ¶ 24.
(12) “DTD imposes a complex hierarchy of' rules and regulations upon its local chapters and individual members, and its constitution sets' out a clear command structure to which local chapters must adhere.” Court’s Opinion ¶ 24.
(13) “Brown and Clukey, who had both been drinking alcoholic beverages, went upstairs to Clukey’s room, past a fraternity member whose function was *798 to limit access to the upper floors to residents and their guests. Inside 'his room, Clukey sexually assaulted .Brown and prevented her from leaving the room for several minutes.” Court’s Opinion ¶ 3.
(14) “The day after the party, Brown reported the incident to the fraternity president, who told her ‘the fraternity had been concerned .about Clukey for a while’ because he had developed a drinking problem and had recently caused property damage and engaged in fights with other fraternity brothers.” Court’s Opinion ¶ 4.
[¶ 32] These facts and conclusions, quoted from the Court’s opinion, support the three theories of liability against both defendants. They also support several inferences from the facts that, according to the reasonable dispute as to material fact standard, are sufficient to avoid a summary judgment. Those inferences are:
[¶ 33] First, DTDNHC’s ownership of the Orono chapter’s real estate, and creation of the local chapter as an unincorporated association of students, is part of a sophisticated legal mechanism, managed by DTD, to attempt to immunize its local chapter real estate from court process and liability for foreseeable lawsuits claiming injury from underage drinking,. excessive drinking, sexual assaults, and other claims that, as the Court recognizes, are the foreseeable result of ceding control of the real estate to eighteen- to twenty-two-year-olds.
[II34] Second, considering, the risks that the Court recognizes are foreseeable, DTD knows or should know that its so-called member responsibility guidelines will not be enforced,
[¶35] Third, the stairs monitor, who apparently was tasked with watching for potential problems, allowed a person who was known to be destructive and have a drinking problem — and who had been drinking that night — to take a young woman upstairs to the bedroom areas of the fraternity.
II. LEGAL ANALYSIS
[¶ 36] The record demonstrates that DTD and DTDNHC are closely related entities, with DTDNHC being DTD’s agent for owning the real estate of its local chapters. As the owner of the real estate, DTDNHC, like DTD, is charged with knowledge of the foreseeable risks from use of its real estate, and'is responsible when there is injury resulting from a breach of the duty of care to guard against those foreseeable risks. To hold otherwise, as the Court suggests, would declare that an. owner of a premises is not liable for a premises liability claim.
[¶ 37] To establish liability for DTDNHC, one need look only to the principal precedent cited by the Court, Stanton, 2001 ME 96, 773 A.2d 1045. The Court’s opinion recognizes that in Stanton, the University, “as the owner of the dormitory,” Court’s Opinion ¶ 11, was the, entity with legal responsibility in the action for sexual assault arising from a breach of the University’s duty of care. Stanton, 2001 ME 96, ¶¶ 8-10, 773 A.2d 1045. DTDNHC, the “owner of the dormitory” here, is similarly liable to respond to the pending claims for premises liability, negligence, and negligent infliction of emotional distress.
[¶ 38] We have long held that owners of educational institution property have a legal duty to exereise reasonable care toward students and others reasonably anticipated to be on the premises. See Schultz v. Gould Acad., 332 A.2d 368, 369, 372 (Me.1975) (reinstating a jury verdict re-siilting from the sexual assault of a student in a school dormitory). “[T]he law of *799 Maine is that the owner of premises owes a legal duty to his business invitees to protect them from those dangers reasonably to be foreseen Id. at 371; see also Isaacson v. Husson Coll., 332 A.2d 757, 759, 765 (Me.1975) (affirming a verdict resulting from a student’s slip and fall on a college walkway). Owners of fraternity property, here DTDNHC, have similar responsibility.
[¶ 39] Our opinions in Schultz, 332 A.2d at 369, and Isaacson, 332 A.2d at 758, described them as negligence actions, not premises liability actions. Here, the Court attempts to distinguish the premises liability and negligence claims and holds that the premises liability claim may proceed, but the negligence claim may not. To do so, the Court cites Stanton, 2001 ME 96, ¶¶ 8, 10, 773 A.2d 1045, apparently to suggest that there is some distinction between premises liability and negligence. If that is the suggestion, it is a misreading of Stanton. In Stanton we characterized the legal question presented as one of “Negligence,” and we described “a prima facie case of negligence.” Id. ¶ 7. Then we stated: “We have determined that a duty founded on premises liability exists between a student and a college or other educational institution.” Id. ¶ 8. (citing Schultz, 332 A.2d at 370). Concluding the negligence-premises liability discussion, we observed: “[T]he court erred in granting summary judgment to the University on the negligence claim.” Id. ¶ 11 (emphasis added).
[¶ 40] In our prior opinions, we have not established any distinct elements separating a negligence claim from a premises liability claim. “A prima facie case of negligence requires a plaintiff to establish the following elements: a duty owed, a breach of that duty, and an injury to the plaintiff that is proximately caused by a breach of that duty.” Stanton, 2001 ME 96, ¶ 7, 773 A.2d 1045. The facts and conclusions stated in the Court’s opinion establish the duty, and that there is a dispute of material fact as to breach of that duty causing injury to the plaintiff. Brown’s negligence claim and premises liability claim, if there is any distinction between the two, against both DTD and DTDNHC, have disputes of material fact regarding breach of duty and causation that bar summary judgment in favor of either defendant.
[¶ 41] To prevail on her negligent infliction of emotional distress claim, Brown will have to prove by a preponderance of the evidence that:
(1) DTD and/or DTDNHC were negligent;
(2) Emotional distress to Brown was a reasonably foreseeable result of the defendants’ negligent conduct; and
(3) Brown suffered serious emotional distress as a result of the defendants’ negligence.
See Maine Jury Instruction Manual § 7-70 at 7-95 (2015 ed.).
[¶ 42] The above discussion demonstrates that Brown is entitled to a trial on her negligence claims against DTD and DTDNHC. If she proves negligence, then it is likely that Brown would be able to prove foreseeability and serious emotional distress if, as the record suggests, Brown was sexually assaulted, held against her will, and placed in fear of an imminent, more serious sexual attack. Certainly, at this pretrial stage, there remains a dispute of material fact as to these issues.
[¶ 43] Accordingly, with fact disputes remaining, the trial court’s grant of summary judgment should be vacated and Brown’s claims of premises liability, negligence, and negligent infliction of emotional distress should proceed to trial against both DTD and DTDNHC.