*800 CLIFFORD, J.,
dissenting.
[¶ 44] Because I agree with the Superi- or Court that Delta Tau Delta Fraternity, Inc. (DTD) did not have a duty of care running to social invitees of members of the fraternal organization’s Gamma ■' Nu chapter located on the University of Maine at Orono campus, I respectfully dissent.' Í agree with ’the Court’s determinations that the entry of summary judgment in favor of Delta Tau Delta National Housing Corporation was proper, and that DTD did not have a duty of care for purposes of Brown’s negligence and negligent infliction of emotional distress claims. I disagree, however, that DTD had a duty of care to, prevent the intentional torts of a member against that member’s social invitee for purposes of a premises liability claim. The undisputed facts demonstrate that (A) DTD did not have control of the premises or the resident members of the local chapter; (B) there was no special relationship between DTD and Brown, the injured party in this case, that would create a duty in DTD to protect her — a member’s social invitee — from the member’s intentional torts; and (C) DTD did not assume a duty. Finally, even if there were a duty, I disagree with the overly expansive ’description of that duty provided by the Court'in its opinion.
. I. EXISTENCE OF A- , DUTY OF-CARE
[¶ 45] To succeed in a premises liability claim, which is a particularized application of general negligence law, Brown must first establish the existence of a duty in DTD “to use reasonable care to -all persons lawfully on the premises.” Quadrino v. Bar Harbor Banking & Trust Co., 588 A.2d 303, 304 (Me.1991) (quotation marks omitted). This duty must run from DTD to Brown, who was a social invitee- of a member of a local chapter who resided in a building owned by a holding company affiliated with DTD and occupied by local chapter members.
[¶ 46] There are- no material disputes regarding the facts that are relevant in determining whether DTD had a duty of care, and the court’s entry of summary judgment in favor of DTD on the- legal question of duty is reviewed de novo. See Estate of Cabatit v. Canders, 2014 ME 133, ¶ 8, 105 A.3d 439 (stating that a plaintiff has the burden, in defending against a defendant’s motion for summary judgment, “to make out the prima facie case”); Estate of Cummings v. Davie, 2012 ME 43, ¶ 9, 40 A.3d. 971 (stating that the question of duty is a legal question).
[¶ 47] For purposes of determining, as a*matter of law, whether there is a duty, the relevant considerations are the degree of control exercised by the defendant, the foreseeability of injury, and the relationship of the parties. Hughes v. Beta Upsilon Bldg. Ass’n, 619 A.2d 525, 527 (Me.1993). A duty “arises only from a relationship that society recognizes as sufficient to create the duty. Just as control and foreseeability are factors in a duty analysis, so is the relationship of the parties.” Id.
[¶ 48] There is no real question that the type of injury suffered by Brown was. foreseeable. See Stanton v. Univ. of Me. Sys., 2001 ME 96, ¶ 10, 773 A.2d 1045 (holding that sexual assaults in college housing are foreseeable). Thus, to determine whether DTD had a duty of reasonable care to provide safe premises free from members’ tortious conduct, the relevant considerations are (A) the degree of control exerted by DTD over the premises, (B) the nature of the relationship that DTD had with social invitees visiting Gamma Nu’s members in the building, and (C) whether, although no duty otherwise existed, DTD voluntarily assumed a duty of reasonable care to provide safe premises.
*801 A. Degree of Control Exercised by DTD
[¶ 49] In a premises liability case, a plaintiff must establish that the defendant was in control of the premises: See Stewart v. Aldrich, 2002 ME 16, ¶ 10, 788 A.2d 603 (holding that a landlord is generally not responsible for a dangerous condition that starts after a tenant “takes exclusive possession and control of the premises”); see also Rogers v. Sigma Chi Int’l Fraternity, 9 N.E.3d 755, 760 (Ind.Ct.App.2014) (“In order to have the occupation- or control of premises necessary to impose a legal duty with respect to the condition or use of those premises, one must ordinarily have the power and the right to admit individuals to the premises, or to exclude them . from the premises.” (quotation marks omitted)). As the Restatement (Third) of Torts: Liability for Physical & Emotional Harm § 49 (2012) provides, a “possessor of land” is generally “a person who occupies the land and controls it.”
[¶ 50] In each of the cases cited by the Court, the duty of care under consideration was a general negligence duty of care not connected to control of the premises. See Grenier v. Comm’r of Transp., 306 Conn. 523, 51 A.3d 367, 372-74, 387-89 (2012) (reviewing a summary judgment on a negligence claim arising from an automobile collision that occurred off the premises and resulted in a pledge’s death); Morrison v. Kappa Alpha Psi Fraternity, 738 So.2d 1105, 1110, 1117-20 (La.Ct.App.1999) (reviewing a jury verdict on negligence claims arising from an assault, in a university dormitory room; on a student who was interested in membership).,
[¶ 51] DTD is not the possessor, • or even the owner, of the premises at issue and did not have control over the premises. An entity that is not in possession or control of the premises can be held liable in premises liability only if that party “negligently create[d] a dangerous condition on the land,” in which case the party “may be liable for reasonably foreseeable harms.” Colvin v. A R Cable Servs.-ME, Inc., 1997 ME 163, ¶ 7, 697 A.2d 1289. The case in which this holding was reached involved allegations, that a cable company negligently installed a cable box in a location that, caused injury to the building manager. Id. ¶¶ 2-4. The facts, alleged here are dissimilar because they arise not from an alteration to the premises that rendered it unsafe but instead from the intentional conduct of an individual actually in possession of the premises.
[¶52] A national fraternity that does not own;' possess, or control the house occupied by its members has no duty in premises liability to a local chapter’s social invitees. See Ostrander v. Duggan, 341 F.3d 745, 748 (8th Cir.2003) (holding that a national fraternity had no duty in premises liability in part because it did not own, possess, or control the house); see also Yost v. Wabash Coll., 3 N.E.3d 509, 513, 516 (Ind.2014) (holding, in a premises liability case, that a college was not liable for injuries to a fraternity pledge because it was not in control of premises leased to a local chapter of a fraternity, which had the exclusive right to possess and control the premises); Rogers, 9 N.E.3d at 759-61 (holding that an international fraternity had no premises liability for an assault that occurred at a local chapter’s fraternity party because the premises ■ were not owned by the fraternity or any related party and the fraternity did not exercise control over the premises).
[¶ 53] Here, DTD may have had some influence on its individual members’ conduct, and it did have an affiliation with the owner of the premises, but neither of those facts demonstrates that DTD had the authority to control activities on the premises or its members’ intentional conduct toward those members’ social invitees. See Sha- *802 heen v. Yonts, 394 Fed.Appx. 224, 229-30 (6th Cir.2010) (holding that a duty should not be imposed if a party has no real means of controlling behavior); Yost, 3 N.E.3d at 521 (holding that the national fraternity did not have a duty to a social invitee when it “lacked any direct oversight and control of the individual fraternity members”).[4] In the absence of an ability to control activities on the premises, DTD has no duty in premises liability.
B. Relationship Between DTD and Social Invitees of DTD Members
[¶ 54] I also disagree with the Court’s conclusion that a special relationship existed. The Court speaks only of the relationship between DTD and its members. The pertinent question, however, is whether there is a special relationship between DTD and Brown, who seeks to recover damages based on her status as a social invitee of a local chapter member when DTD did not itself invite her to the premises.
[IT 55] A national fraternity such as DTD may well have a special relationship with its own members, but that relationship does not automatically translate into a special relationship with social invitees of those members for purposes of premises liability. This is not a case involving a local fraternity’s hazing of its pledges, cf. Grenier, 51 A.3d at 387-89, or of those interested in membership, cf. Morrison, 738 So.2d at 1110. Instead, this is a case involving an individual member’s commission of intentional torts against the member’s own guest.
[¶ 56] For purposes of premises liability claims, “[o]nly when there is a special relationship, may the actor be found to have a common law duty to prevent harm to another, caused by a third party.” Belyea v. Shiretown Motor Inn, LP, 2010 ME 75, ¶ 9, 2 A.3d 276 (quotation marks omitted). “There is simply no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless ... a special relation ex-ists_” Id. (alterations in original) (quo *803 tation marks omitted); see also Hughes, 619 A.2d at 527 (holding that nonfeasance cannot render a defendant hable unless the defendant had a duty to affirmatively protect the plaintiff from a danger that it did not create because of a special relationship with that plaintiff).
[¶ 57] Only “[c]ertain narrowly defined, special relationships give rise to an affirmative duty to aid and protect, such as the relationship between a common carrier and passenger, employer and employee, parent and child, or innkeeper and guest.” Estate of Cilley v. Lane, 2009 ME 133, ¶ 17, 985 A.2d 481 (footnotes omitted); see also Stanton, 2001 ME 96, ¶ 10, 773 A.2d 1045 (holding that the University of Maine had a duty to reasonably warn and advise a student of safety measures); Schultz v. Gould Acad., 332 A.2d 368, 370 (Me.1975) (holding that a boarding school that provided security staff to protect its residents could be held liable for a failure to provide security “even though a wilful or negligent or criminal act by a third person intervened and contributed to the harm”).
[¶ 58] In distinguishing among relationships to determine whether a duty exists, we have held that, although an innkeeper has a duty to a guest to proactively prevent an assault if it is reasonably foreseeable, it does not have a similar duty to a patron of a lounge that operates on the inn’s premises because there is no special relationship. Belyea, 2010 ME 75, ¶¶ 10-12, 2 A.3d 276. We noted in that case that “a landlord’s mere ability to control [an activity of its tenant] does not give rise to a legal duty.” Id. ¶ 13 (alteration in original) (quotation marks omitted). Thus, even if DTD had some degree of control over activities on the premises, no duty can arise absent the necessary relationship with the injured party.
[¶ 59] Here, DTD did not invite Brown to the premises, and for purposes of premises liability, she- was not, as the social invitee of a fraternity member, in a special relationship with DTD, which did not own, possess, or control the local chapter house in which the intentional torts occurred. Unlike an innkeeper in a direct contractual relationship with a lodger, see id., or a boarding school or University that provides housing for its students, see Stanton, 2001 ME 96, ¶ 10, 773 A.2d 1045; Schultz, 332 A.2d at 369-70, DTD had no direct relationship with Brown as a social invitee of a member living in -a house owned by a separate entity affiliated with DTD and possessed by local chapter members. The students who were injured in Stanton and Schultz were each lodgers in school-owned dormitories in which assaults occurred. Stanton, 2001 ME 96, ¶¶ 2-3, 10, 773 A.2d 1045; Schultz, 332 A.2d at 369-70. Brown was instead á social invitee óf a member of a local chaptér of a fraternity affiliated with the holding company that owned the premises. See Delta Tau Delta v. Johnson, 712 N.E.2d 968, 970-75 (Ind.1999) (holding that, although the local chapter, which owned and occupied the fraternity house, had a duty to a social invitee to keep the premises safe against foreseeable sexual assault, the national fraternity did not undertake to provide security and did not assume such a duty).
[¶ 60] I would conclude that, in addition to failing to demonstrate the necessary degree of control oyer the premises in DTD, Brown has provided . insufficient facts to support the existence of a duty because no special relationship has been shown to exist between Brown and DTD.
C. Assumption of Duty
[¶ 61] The facts presented on summary judgment also do not raise a genuine issue of material fact with respect to whether, although no duty otherwise existed, DTD voluntarily assumed a-duty of care to pro *804 tect members’ social invitees against members’ torts on the premises. See Smith v. Delta Tau Delta, Inc., 9 N.E.3d 154, 160 (Ind.2014). -DTD did not undertake to provide security, and the undisputed facts demonstrate only that DTD adopted disciplinary standards. and implemented educational programs that were designed to promote proper conduct. A national fraternity that- implements clear discipline policies and educates against sexual violence and excessive drinking should not be deemed to have thereby,assumed a legally enforceable duty of care to all social invitees of individual members of .local chapters. As the Indiana Supreme Court stated, a “national organization ... should be encouraged,, not disincentivized, to undertake programs to promote safe and positive behavior and to discourage hazing and other personally and socially undesirable conduct,” which it might not.do if those efforts would render it liable for any .misconduct of local members. Yost, 3 N.E.3d at 521.
II. SCOPE OF ANY DUTY OF CARE
[¶ 62] Finally, the extent of the dpty defined by the Court today is distinct from the duties determined to exist in Stanton and Schultz. In Stanton, the University was determined to have “a duty to reasonably warn and advise students of steps they could take to improve their personal safety” in college dormitories — not a duty to prevent any individuals’ commission of torts against other individuals. 2001 ME 96, ¶ 10, 773 A.2d 1045. In Schultz, the duty at issue was a duty of care to prevent an assault “reasonably to be foreseen” based on a school security agent’s observation of specific evidence of an intrusion into the girls’ dormitory — not a generalized duty to prevent a sexual assault from occurring against a social invitee of an adult resident in a building that was not posted with a security guard. 332 A.2d at 371; see also Johnson, 712 N.E.2d at 975 (holding that a national fraternity that does not undertake to provide security services does not assume a duty of care).
[¶ 63] If the Court is correct that the duty imposed is “no more onerous or unexpected than the duty society imposes upon a university to exercise care in the administration of its dormitories,” Court’s Opinion ¶27, then the duty imposed must be similar to the duty to warn of steps that could improve personal safety, see Stanton, 2001 ME 96, ¶ 10, 773 A.2d 1045, or the duty to prevent an assault if the national fraternity provides security services in the local chapter’s house and observes evidence of misconduct, see Schultz, 332 A.2d at 371. No facts demonstrating a breach of such a limited duty have been presented on summary judgment.
[¶ 64] The duty that the Court adopts today is, instead, a more expansive duty “to exercise reasonable care and take reasonable steps to provide premises that are reasonably safe and reasonably free from the potential of sexual misconduct-by [the fraternity’s] members, for all social invitees to chapter-sponsored events.” Court’s Opinion ¶ 29. This broad and vaguely defined duty is fundamentally at odds with basic principles of tort law. The duty of reasonable care in providing a reasonably safe premises “is not one of absolute care or of an insurer.” Simmons, Zillman & Gregory, Maine Tort Law § 8.02 at 8-3 (2004 ed.). On the summary judgment record presented, the Court can only'be understood' to suggest that a national fraternity is such .a general insurer, given that the Court has not identified which facts presented on summary judgment would, if believed, demonstrate any breach of the amorphous duty announced. See Estate of Cabatit, 2014 ME 133, ¶ 8, 105 A.3d 439 (requiring a plaintiff to pres *805 ent facts demonstrating a prima facie case for a claim to survive a defendant’s motion for summary judgment). It is unclear what measures DTD was duty-bound .to undertake, and it is even less clear how the evidence presented on. summary judgment could demonstrate that DTD failed to undertake any such measures.
[¶ 65] Thus, even if any duty did exist, I would conclude that the scope of that duty could not be so broad, as to. require DTD, which was not present at the social gathering, to generally insure against the risk of sexual misconduct being committed on the premises by a member against a social invitee during the event. The evidence presented by Brown to estáblish a prima facie case is inadequate to demonstrate a breach of any appropriately limited duty that could be imposed on DTD for purposes of premises liability. .
III. CONCLUSION
[¶ 66] In summary, I would hold that a national fraternity does not have an expansive duty of care in premises liability running to a social invitee of an individual member of á local chapter to protect against the potential of sexual misconduct by that member when the national fraternity does not own or exercise control over the premises, does not have a special relationship with the member’s social invitee, and has not assumed a duty by undertaking to provide security for or other oversight of the building. Accordingly, I would affirm the judgment of the Superior Court.

. Even in ordinary negligence cases unrelated to premises liability, national fraternities and building associations have consistently been determined not to have a duty to a local chapter's social invitees when they do not provide oversight or exercise control. See Shaheen v. Yonts, 394 Fed.Appx. 224, 227-31 (6th Cir.2010) (holding that neither the national fraternity nor the holding company for fraternity property had a presence at the local chapter house that would generate a duty to supervise and control drinking at a party in that house to prevent injury to a social invitee); Yost v. Wabash Coll., 3 N.E.3d 509, 513, 520-21 (Ind.2014) (holding that the national fraternity did not have or assume a duty to a fraternity’s pledge because the national fraternity did not oversee and control individual fraternity members or involve itself in the local chapter’s day-to-day management); Grand Aerie Fraternal Order of Eagles v. Carneyhan, 169 S.W.3d 840, 848-54 (Ky.2005) (holding that the fraternal organization had no duty to a social invitee at a local event because it had no ability to control the local chapter alleged to have caused the harm); Pingeton v. Erhartic, 12 Mass. L. Rptr. 644, 2001 WL 292992 (Mass.Super.Ct.2001) (concluding that, although the national fraternity had an alcohol policy for its local chapters and could discipline local chapters and members, it had no duty to social invitees because it was not present on a day-to-day basis and could not enforce discipline until after violations had occurred); Sparks v. Alpha Tau Omega Fraternity, Inc., 255 P.3d 238, 244-46 (Nev.2011) (holding that the national fraternity did not have a duty to third parties because it did not control or monitor those who attended events organized by a local chapter); Alumni Ass'n v. Sullivan, 524 Pa. 356, 572 A.2d 1209, 1209-10, 1212-13 (1990) (holding that the national fraternity had no duty to those injured by a social invitee after drinking alcohol because it had no ability to monitor its chapters’ activities and had the power to discipline only after the fact).