ATTORNEYS FOR APPELLANT
Patrick A. Elward
Karl L. Mulvaney
Briana L. Clark
Bingham Greenebaum Doll LLP
Indianapolis, Indiana


Anne L. Cowgur
Taft Stettinius & Hollister LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE WABASH COLLEGE
Thomas R. Schultz
Brandon M. Kimura
Schultz & Pogue LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE PHI KAPPA PSI FRATERNITY,
INC. AND PHI KAPPA PSI FRATERNITY – INDIANA GAMMA
CHAPTER AT WABASH COLLEGE
Douglas B. King
Matthew M. Adolay
Maureen E. Ward
Wooden & McLaughlin LLP
Indianapolis, Indiana

---

# In the
# Indiana Supreme Court

FILED
Feb 13 2014, 12:21 pm
CLERK
of the supreme court,
court of appeals and
tax court

### No. 54S01-1303-CT-161

BRIAN YOST,                                                      *Appellant (Plaintiff),*

v.

WABASH COLLEGE,
PHI KAPPA PSI FRATERNITY – INDIANA GAMMA CHAPTER AT WABASH COLLEGE,
PHI KAPPA PSI FRATERNITY, INC., AND
NATHAN CRAVENS                                          *Appellees (Defendants).*

---

Appeal from the Montgomery Superior Court, No. 54D01-0908-CT-351
The Honorable David A. Ault, Judge

---

On Transfer from the Indiana Court of Appeals, No. 54A01-1201-CT-31

---

**February 13, 2014**


**Dickson, Chief Justice.**


The plaintiff, a college freshman and fraternity pledge, filed this personal injury action seeking damages from his college, his campus fraternity, its national organization, and a student

fraternity member for personal injuries sustained in an incident at the fraternity house. We re-verse the trial court's grant of summary judgment for the campus fraternity but affirm the grant of summary judgment for the college and the national fraternity organization.

The plaintiff, Brian Yost, as an 18-year-old freshman at Wabash College and a pledge at the Phi Kappa Psi fraternity, suffered injuries in an incident at the fraternity house in September 2007. Contending that his injuries resulted from a fraternity hazing incident, the plaintiff initiat-ed this action seeking damages from Wabash College (the owner and landlord of the fraternity house), the campus local fraternity (Phi Kappa Psi Fraternity – Indiana Gamma Chapter at Wa-bash College, hereafter the "local fraternity"), the national fraternity (Phi Kappa Psi Fraternity, Inc.), and Nathan Cravens, one of the fraternity members. Further details are provided below as needed and are more fully summarized in the opinion of the Court of Appeals. *See* Yost v. Wa-bash Coll., 976 N.E.2d 724, 728–29 (Ind. Ct. App. 2012). The college and the two fraternity de-fendants sought summary judgment, which the trial court granted and then ordered entry of final judgments thereon. The plaintiff appealed, and the Court of Appeals affirmed. *Id.* at 745. We granted transfer.

In reviewing the grant of a motion for summary judgment, the appellate court applies the same standard applicable to the trial court. Wilson v. Isaacs, 929 N.E.2d 200, 202 (Ind. 2010). Under Indiana summary judgment jurisprudence, the moving party "bears the initial burden of making a prima facie showing that there are no genuine issues of material fact and that it is enti-tled to judgment as a matter of law." Gill v. Evansville Sheet Metal Works, Inc., 970 N.E.2d 633, 637 (Ind. 2012); *see* Dreaded, Inc. v. St. Paul Guardian Ins. Co., 904 N.E.2d 1267, 1270 (Ind. 2009); *see also* Ind. Trial Rule 56(C); N. Ind. Pub. Serv. Co. v. Bloom, 847 N.E.2d 175, 180 (Ind. 2006). If the moving party carries this burden, then the non-moving party must come forward with evidence establishing the existence of a genuine issue of material fact. Jarboe v. Landmark Cmty. Newspapers of Ind., Inc., 644 N.E.2d 118, 123 (Ind. 1994). Review is limited to those facts designated to the trial court. Ind. Trial Rule 56(H). "All facts and reasonable in-ferences drawn from those facts are construed in favor of the non-moving party." Mangold ex rel. Mangold v. Ind. Dep't of Natural Res., 756 N.E.2d 970, 973 (Ind. 2001). "We must carefully review a decision on a summary judgment motion to ensure that a party was not improperly de-

nied its day in court." *Id.* at 974. We will separately address each party's summary judgment motion.

## 1. Wabash College

Wabash sought summary judgment, asserting: (a) it did not have a duty as a college or as a landlord to protect Yost from Cravens' alleged negligence or criminal attack; (b) it is not subject to vicariously liability for the actions of any co-defendant; and (c) Yost's claim for punitive damages fails as a matter of law. Appellant's App'x at 65–66. In response, Yost clarified and explained his claims. First, he emphasized, "Landowner liability – not the doctrine of *in loco parentis* – governs this case."[1] *Id.* at 133. Yost asserted that "[a]s the lessor, Wabash had a duty to control the conduct of Phi Psi, and its members," and that "[a]s the landlord, Wabash had a duty to protect [Yost] . . . from reasonably foreseeable tortious and criminal activity." *Id.* Second, Yost argued, "Aside from Wabash's duty as the lessor of the property, Wabash . . . assumed a duty to protect [Yost] from this incident when it prohibited hazing and responded to the many previous incidents of hazing with disciplinary measures." *Id.* Third, Yost claimed that Wabash is "vicariously liable for the actions of Phi Psi's members." *Id.* at 134. *But cf. id.* at 148 (expressing "vicariously liable for the actions of Phi Psi and its members"). "Finally," Yost claimed, he "is entitled to punitive damages from Wabash." *Id.* at 134. Yost appears to assert a claim for punitive damages as a separate cause of action, but, while punitive damages has its own prerequisite elements of proof, such elements do not establish an independent cause of action.

---

[1] Yost does not contend that Wabash, or the national fraternity, assumed or was otherwise under a general duty to safeguard his general health and well being. Rather, in his trial court response opposing summary judgment, Yost specifically denies that he is relying on an *in loco parentis* ("in the place of the parent") duty. Appellant's App'x at 404. We have "long held [that primary and secondary school authorities] owe a duty to 'exercise reasonable care and supervision for the safety of the children under their control.'" N. Ind. Pub. Serv. Co. v. Sharp, 790 N.E.2d 462, 465 (Ind. 2003) (quoting Miller v. Griesel, 261 Ind. 604, 611, 308 N.E.2d 701, 706 (1974)). But this Court has expressed disapproval of such duty in the college and university setting. *Cf.* Campbell v. Bd. of Trs. of Wabash Coll., 495 N.E.2d 227, 232 (Ind. Ct. App. 1986) ("College students and fraternity members are not children. Save for very few legal exceptions, they are adult citizens, ready, able, and willing to be responsible for their own actions. Colleges and fraternities are not expected to assume a role anything akin to *in loco parentis* or a general insurer.") (footnote omitted), *trans. denied*; *see also* Swanson v. Wabash Coll., 504 N.E.2d 327, 330 (Ind. Ct. App. 1987) (relying on Campbell), *trans. not sought*. Because Yost expressly disavows reliance upon any theory of liability related to *in loco parentis*, and he does not ask us to consider the appropriateness of broadening this general duty of care, in whole or in part, to include post-secondary institutions, we decline to address the issue.

3

The prerequisite elements only define when punitive damages *may* be awarded as part of the damages to which a plaintiff may be entitled if successful under a recognized existing cause of action. *See* Crabtree ex rel. Kemp v. Estate of Crabtree, 837 N.E.2d 135, 137–38 (Ind. 2005). We thus consider Yost's claims against Wabash to present only three theories of liability: [a] negligence as owner and landlord of the local fraternity house by failing to protect Yost from the alleged negligent or criminal act[2] of Cravens; [b] negligent breach of assumed duty "to supervise and regulate the activities and behavior of fraternities on its campus," Appellant's Br. at 17, by failing to protect Yost from hazing; and [c] vicarious liability for the negligence of the local fraternity and its members.

The essential elements for a negligence action are "(1) a duty owed to the plaintiff by the defendant, (2) a breach of the duty, and (3) an injury proximately caused by the breach of duty." Pfenning v. Lineman, 947 N.E.2d 392, 398 (Ind. 2011) (citing Caesars Riverboat Casino, LLC v. Kephart, 934 N.E.2d 1120, 1123 (Ind. 2010)). Where there is no duty, there can be no breach, and thus the party cannot be found negligent. Pfenning, 947 N.E.2d at 398. Whether a duty exists is generally a question of law for the court. *Id.* In making this determination, "a three-part balancing test developed by this Court 'can be a useful tool.'" *Id.* (quoting Kephart, 934 N.E.2d at 1123) (citing N. Ind. Pub. Serv. Co. v. Sharp, 790 N.E.2d 462, 465 (Ind. 2003)) (referencing the factors enunciated in Webb v. Jarvis, 575 N.E.2d 992, 995 (Ind. 1991): "(1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns"). However, this test is only needed "in those instances where the element of duty has not already been declared or otherwise articulated." Sharp, 790 N.E.2d at 465; *see also* Paragon Family Rest. v. Bartolini, 799 N.E.2d 1048, 1053 (Ind. 2003) ("Where, as in this case, the alleged duty is well-established, there is no need for a new judicial redetermination of duty.").

With respect to claims of liability against an owner for injuries sustained on the premises,

---

[2] The criminal act claimed by Yost is "hazing," which Indiana Code section 35-42-2-2 defines as: "forcing or requiring another person: (1) with or without the consent of the other person; and (2) as a condition of association with a group or organization; to perform an act that creates a substantial risk of bodily injury."Ind. Code § 35-42-2-2 (2012). Hazing may constitute the offense of Criminal Recklessness. *Id.*

4

the duties of a landowner are well established. "A landowner owes to an invitee or social guest 'a duty to exercise reasonable care for his protection while he is on the landowner's premises.'" Pfenning, 947 N.E.2d at 406 (quoting Burrell v. Meads, 569 N.E.2d 637, 639 (Ind. 1991)). To delineate this duty we have adopted the Restatement (Second) of Torts § 343 (1965):

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

*Id.* (quoting Burrell at 639–40). Within the contours of this duty, we have held that landowners "have a duty to take reasonable precautions to prevent foreseeable criminal acts against invitees." L.W. v. Western Golf Ass'n, 712 N.E.2d 983, 985 (Ind. 1999); *see also* Delta Tau Delta, Beta Alpha Chapter v. Johnson, 712 N.E.2d 968, 973 (Ind. 1999). However, when the landowner is a lessor and the lessee is in operational control of the premises, such duty rarely exists. "[A] landlord under many circumstances has no liability to tenants or others for injuries on the property when the tenant is in full control of the leased premises." Dutchmen Mfg., Inc. v. Reynolds, 849 N.E.2d 516, 525 (Ind. 2006). "[I]n the absence of statute, covenant, fraud or concealment, a landlord who gives a tenant full control and possession of the leased property will not be liable for personal injuries sustained by the tenant or other persons lawfully upon the leased property." Olds v. Noel, 857 N.E.2d 1041, 1044 (Ind. Ct. App. 2006) (citation omitted), *trans. not sought*; *cf.* Rossow v. Jones, 404 N.E.2d 12, 14 (Ind. Ct. App. 1980) (holding that a landlord has a duty of reasonable care over common areas or other areas over which the landlord has retained control), *trans. not sought*.

Yost concedes in his amended complaint that Wabash, as lessor, leased the fraternity house to the local fraternity. Appellant's App'x at 43–44. He reiterates the existence of a land-

lord-tenant relationship on appeal.[3] Appellant's Br. at 13 This undisputed fact is established by judicial admission and additional evidence need not be designated for summary judgment purposes. *See* Lutz v. Erie Ins. Exch., 848 N.E.2d 675, 678 (Ind. 2006). The undisputed designated evidence also shows that Yost was a pledge in the local fraternity and resided in its fraternity house, and that the events that led to Yost's injury occurred inside the fraternity house, in an area under the exclusive possession and control of the local fraternity. Likewise, there is no dispute that the only participants in the events that resulted in Yost's injury were active members or pledges of the local fraternity, the lawful tenant in possession and control of the premises. Even if Wabash, as owner and landlord, retained a limited right of entry (of which there is no evidence here), such arrangements do not serve to "defeat the transfer of control and possession of a leased premises to the lessees of that premises." Olds, 857 N.E.2d at 1046. Thus, any duty that might have been owed to Yost would have been owed by the local fraternity, not Wabash.

> In premises liability cases, whether a duty is owed depends primarily upon whether the defendant was in control of the premises when the accident occurred. The rationale is to subject to liability the person who could have known of any dangers on the land and therefore could have acted to prevent any foreseeable harm.

Rhodes v. Wright, 805 N.E.2d 382, 385 (Ind. 2004). Wabash, as the party moving for summary judgment, established that it was the lessor, and the local fraternity as tenant thus had the exclusive right to possess and control the premises. Yost, as the non-moving party, failed to respond by designating any evidence to dispute this fact. We therefore find as a matter of law that Wabash did not have a duty to protect Yost from the injuries he claims that Cravens inflicted.

With respect to Yost's claim of liability from the assumption of duty to protect Yost from hazing, Wabash argues that the college has not undertaken an action or instituted a policy that would constitute an assumption of "a duty of care to Yost to protect him from alleged criminal activity" of his fraternity brothers. Appellee Wabash College's Br. at 16. Yost responds that Wabash undertook actions which support the inference that it assumed a duty to protect Yost from activities like those that led to his injury, specifically, Wabash's enforcement of a "strict

---

[3] Wabash also acknowledges its status as landlord of the property in its brief in support of motion for summary judgment, with the local fraternity being the tenant, Appellant's App'x at 70, and restates the relationship on appeal in its reply brief. Appellee Wabash's Br. at 6.

6

policy against hazing and use[ of] the 'Gentlemen's Rule' to guide student behavior."[4]  Appellant's Br. at 17.

"A duty of care may . . . arise where one party assumes such a duty, either gratuitously or voluntarily.  The assumption of such a duty creates a special relationship between the parties and a corresponding duty to act in the manner of a reasonably prudent person."  Delta Tau Delta, 712 N.E.2d at 975 (alteration in original) (quoting Plan-Tec, Inc. v. Wiggins, 443 N.E.2d 1212, 1219 (Ind. Ct. App. 1983)), *trans. not sought*.  The assumption of such a duty requires affirmative, deliberate conduct such that it is "apparent that the actor . . . specifically [undertook] to perform the task that he is charged with having performed negligently, 'for without the actual assumption of the undertaking there can be no correlative legal duty to perform that undertaking carefully.'"  Lather v. Berg, 519 N.E.2d 755, 766 (Ind. Ct. App. 1988) (quoting Blessing v. United States, 447 F.Supp. 1160, 1188–89 (E.D. Pa. 1978)), *reh'g and trans. denied*; *see also* King v. Northeast Sec., Inc., 790 N.E.2d 474, 486–87 (Ind. 2003) (quoting Lather).  Where "the record contains insufficient evidence to establish such a duty, the court will decide the issue as a matter of law."  Delta Tau Delta, 712 N.E.2d at 975.  The liability for the breach of assumed duty is expressed in the Restatement (Third) of Torts: Physical and Emotional Harm § 42 (2012), which states:

> An actor who undertakes to render services to another and who knows or should know that the services will reduce the risk of physical harm to the other has a duty of reasonable care to the other in conducting the undertaking if:
>
>> (a) the failure to exercise such care increases the risk of harm beyond that which existed without the undertaking, or
>>
>> (b) the person to whom the services are rendered or another relies on the actor's exercising reasonable care in the undertaking.

Thus, to impose liability resulting from breach of assumed duty, it is essential to identify and focus on the specific services undertaken.  Liability attaches only for the failure to exercise reasonable care in conducting the "undertaking."

To support its claim of assumed duty, Yost notes evidence of Wabash's general policy

---

[4] Wabash's "Gentlemen's Rule" is as follows: "The student is expected to conduct himself at all times, both on and off the campus, as a gentlemen and a responsible citizen."  Appellant's App'x at 200–01.

against hazing, procedures for reporting and disciplining students and fraternities that violate the policy, several investigations and resulting discipline for violation of the policy, and the promulgation of the Wabash "Gentlemen's Rule" as a guide for student behavior. While Yost, as the party opposing summary judgment, is entitled to have the designated evidence, and its reasonable inferences, construed in his favor, whether a set of facts gives rise to the existence of duty is a judicial determination. Thus, even assuming that Yost was injured in the course of an incident of "hazing"—a characterization in vigorous dispute among the parties—the conduct of Wabash relied upon by Yost evinces no more than a general intent to elicit good behavior from and maintain general order among the student body. The record reflects that while Wabash does instruct the local fraternities to abide by the rules of the college and their national fraternal organizations, Wabash does not directly oversee the daily activities or organized events of any of the fraternities. Students and faculty may report untoward or criminal behavior to the dean, and based upon some such reports, Wabash did initiate several investigations into various activities of fraternal organizations during the years preceding Yost's injury.

Here, the materials designated on summary judgment provide evidence that Wabash engaged in educational outreach programs to encourage and enhance appropriate student behavior and to discourage hazing. But, the specific "undertaking" did not extend to direct oversight and control of the behavior of individual student members of the local fraternity. Yost does not predicate his claim on alleged negligence by Wabash in the formulation and dissemination of its educational material—the specific services arguably undertaken by Wabash, and for which liability may attach if negligently performed.

Expressed another way, there is no direct evidence or reasonable inferences in this case to establish that Wabash deliberately and specifically undertook to control and protect Yost from the injuries he sustained or to generally prevent its students from engaging in injurious private conduct toward each other. Nor is there evidence that Yost in any way relied upon Wabash to take action in furtherance of the claimed gratuitously assumed duty. Wabash's policies and investigations with respect to hazing do not rise to the level of a specific undertaking that demonstrate a special relationship between Yost and Wabash so as to justify the imposition upon Wabash of a gratuitously assumed duty to protect Yost from hazing. To the contrary, colleges and

8

universities should be encouraged, not disincentivized, to undertake robust programs to discourage hazing and substance abuse. To judicially impose liability under a theory of gratuitously assumed duty is unwise policy and should be cautiously invoked only in extreme circumstances involving a negligently performed assumed undertaking—circumstances not here present.

Looking at the designated evidence in the light most favorable to Yost, we conclude that Wabash has established the absence of any gratuitously assumed duty on its part to protect Yost from the incident of claimed hazing upon which this lawsuit is based. And Yost has not shown a genuine issue of material fact leading to a contrary conclusion. With respect to Yost's claim against Wabash based on the theory of breach of gratuitously assumed duty, we therefore find that Wabash is entitled to summary judgment as a matter of law.

Yost's complaint additionally asserts that Wabash (and the national fraternity) may be held vicariously liable for the alleged negligence of the local fraternity. In seeking summary judgment, Wabash contends that there is "no evidence that demonstrates the necessary elements of manifestation of an agency relationship-consent and control," and thus that it could not be vicariously liable as a matter of law. Appellant's App'x at 71.

Vicarious liability is "a legal fiction by which a court can hold a party legally responsible for the negligence of another, not because the party did anything wrong but rather because of the party's relationship to the wrongdoer." Sword v. NKC Hospitals, Inc., 714 N.E.2d 142, 147 (Ind. 1999). Under this doctrine of imputed liability, "an employer, who is not liable because of his own acts, can be held liable 'for the wrongful acts of his employee which are committed within the scope of employment.'" Id. at 148 (quoting Stropes v. Heritage House Childrens Ctr. of Shelbyville, Inc., 547 N.E.2d 244, 247 (Ind. 1989)). While frequently discussed within the context of an employer-employee relationship, the terms "employer" and "employee" do not always convey the common understanding of employment but reference the master-servant or principal-agent relationship of agency law. "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01 (2006). Two traditional ration-

9

ales underlying the doctrine are "that the employer is properly held accountable, first, because the servant acts upon an implied command from his master and, second, because the master is presumed to exercise control over the behavior of his servant." Stropes, 547 N.E.2d at 252 (citing *Prosser and Keeton on Torts* § 70 at 502 (5th ed. 1984)).[5] The employer-master may thus be held vicariously liable for the wrongful acts of the employee-servant committed within the scope of the agency relationship. Warner Trucking, Inc. v. Carolina Cas. Ins. Co., 686 N.E.2d 102, 105 (Ind. 1997).

With respect to Wabash, construing the evidence in favor of Yost, the non-moving party, the record establishes the lack of any agency relationship between the local fraternity and Wabash. Yost contends that the property lease with right-of-entry and Wabash's practice of disciplining individual participants and sanctioning or withdrawing recognition of fraternities for hazing activities demonstrate that "Wabash had the right to control the activities of [the local fraternity] and its members." Appellant's Br. at 26 (emphasis omitted). But Yost's argument glosses over an essential element of the agency relationship—the agent must "*act on the principal's behalf*." Restatement (Third) of Agency § 1.01 (2006) (emphasis added); *see also id.* cmt. g ("The common-law definition of agency requires as an essential element that the agent consent to act on the principal's behalf, as well as subject to the principal's control. From the standpoint of the principal, this is the purpose for creating the relationship."). Yost contends merely that "Wabash benefits from the presence of fraternities on campus." Appellant's Br. at 25. That Wabash may have benefitted from the presence of the local fraternity does not necessarily mean that the activities, or even the existence, of the local fraternity were as a representative of Wabash. To be sure, the local fraternity operated only with the permission of Wabash, an existence which was predicated on compliance with certain university policies and subject to discipline for noncompliance. But mere consent to governance does not equate to agency. The consent innate to the agency relationship is not merely acquiescence to control, but also the undertaking of some ac-

---

[5] The creation of an agency relationship contemplates a specific undertaking, the nature of which defines the scope of the agency relationship. *See* Restatement (Third) of Agency § 1.01 cmt. c (2006) ("Despite their agency relationship, a principal and an agent retain separate legal personalities. Agency does not merge a principal's personality into that of the agent, nor is an agent, as an autonomous person or organization with distinct legal personality, merged into the principal. The fact that an agent acts on behalf of, or represents, another person implies the existence of limits on the scope of the agency relationship and on the extent to which the principal is accountable for the agent's acts.").

tion on behalf of the principal. *See* Restatement (Third) of Agency § 1.01 cmt. c (2006) ("The common-law definition [of agency] requires that an agent hold power, a concept that encompasses authority but is broader in scope and connotation."). Moreover, the principal must "manifest[] assent . . . that the agent shall act on the principal's behalf." *Id.* § 1.01. There is neither evidence that Wabash assented to such an arrangement nor evidence that the local fraternity manifested assent to take action on behalf of Wabash. This is not a matter upon which there is any issue of material fact, but rather an issue of law. There is no genuine issue of fact tending to show the existence of an agency relationship, and thus the actions of the local fraternity and its members cannot, as a matter of law, be imputed to Wabash under a theory of vicarious liability.

We conclude that, because Wabash, as landlord, had relinquished control of the house to the local fraternity, because any duties assumed by Wabash did not extend to direct oversight and control of individual students living in the house, and because of the absence of any vicarious liability of Wabash arising from any agency relationship between Wabash and the local fraternity, Wabash is entitled to summary judgment in its favor.

## 2. The National Fraternity

As to the national fraternity's motion for summary judgment, the question is whether there is an absence of any genuine issue of fact to support any liability theory asserted by Yost. Yost claims liability of the national fraternity on grounds of (a) breach of general duty of care arising from the totality of circumstances relating to the national fraternity's relationship with the local fraternity, (b) breach of assumed duty arising from affirmative steps to prohibit and prevent hazing, or (c) vicarious liability for the actions of the local fraternity. To succeed on its motion for summary judgment, the national fraternity must establish that the undisputed designated evidence establishes as a matter of law that it did not have any duty to protect Yost from the injuries he sustained and that it was not vicariously liable for the actions of the local fraternity.

The designated evidence indicates that the national fraternity strongly disapproved of hazing and promoted gentlemanly behavior in its printed charters and bylaws through its aspirational enactments and promotional materials. Additionally, each local chapter is annually pro-

11

vided with a risk guide from the national fraternity's insurance company that prohibits hazing, and each fraternity member completes an online course on fraternity life that contains instruction on the dangers of hazing and hypothetical examples of hazing behavior. As to its authority and practice of direct control, the national fraternity retains the power to "issue and suspend charters and also to revoke the same after due notice and hearing," Appellant's App'x at 638, and to discipline or expel individual members of the fraternity after notice and a hearing. *Id*. at 639. Finally, each local chapter has an advisor that acts as a liaison between the local fraternity and its national namesake. That advisor, however, is a volunteer selected by the local chapter (subject to approval by the national fraternity) and is not under the control of the national fraternity. The national fraternity's manual equates the local chapters to "small corporation[s]" and states that "[e]ach chapter is a complete self-governing body subject to certain rules and regulations set out by the [national fraternity]." *Id.* at 854.

Yost's claims against the national fraternity are based on negligence, that is, on a breach of duty to exercise reasonable care. Absent the existence of a legally recognized duty, there can be no negligence or resulting liability. Kephart, 934 N.E.2d at 1123. The determination of duty is generally an issue of law to be determined by the court. Pfenning, 947 N.E.2d at 398. While courts will find a duty to exist where "reasonable persons would recognize it and agree that it exists," *id*. (citation omitted), we recognize that a helpful tool for such evaluation can be the Webb v. Jarvis test, which balances three factors: "(1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns." 575 N.E.2d at 995.

Of these three factors, the parties' relationship and public policy concerns undermine Yost's claim of duty on the part of the national fraternity under the designated facts most favorable to Yost. The national fraternity lacked any direct oversight and control of the individual fraternity members. It did not have any employees present in the fraternity house, and the day-to-day management of the house was the responsibility of the local fraternity, not the national fraternity. Despite the national fraternity's efforts to establish aspirational objectives and to promote their fulfillment, the relationship between the national fraternity and the individual student members was remote and tenuous. Public policy concerns likewise do not favor recognition of a

12

specific duty of care toward Yost by the national fraternity. As we noted above with respect to Wabash, the national organization—with which local fraternities and sororities affiliate—should be encouraged, not disincentivized, to undertake programs to promote safe and positive behavior and to discourage hazing and other personally and socially undesirable conduct. In sum, we conclude that the national fraternity had no general duty to Yost upon which this negligence action may be based.

With respect to Yost's claim that the national fraternity had assumed a duty toward him by reason of its actions, our analysis parallels our discussion as to Wabash. As we previously noted, the concept of assumed duty is expressed in the Restatement and requires a focus upon the specific services undertaken. While an actor may be accountable for negligence in the performance of certain services actually undertaken, such liability does not extend beyond the undertaking. Here, the materials designated on summary judgment provide evidence that the national fraternity engaged in educational outreach programs to enhance proper behavior and to discourage hazing. But the specific undertaking did not extend to actual oversight and control over the behavior of individual student members of the local fraternity. Yost does not predicate his claim on alleged negligence by the national fraternity in the formulation and dissemination of its educational material—the specific services arguably undertaken by the national fraternity. We find that the national fraternity did not assume any duty upon which Yost may now claim liability for damages.

In addition to claiming liability resulting from the direct conduct of the national fraternity, Yost also argues that the national fraternity should be vicariously liable for the conduct of the local fraternity and its members. The national fraternity asserts that it is entitled to summary judgment because the designated evidence shows that it did not have the power to control the conduct of the local fraternity or its members toward Yost, nor did the local fraternity members consent to any such control.

As we noted in Part 1 above, for the liability of an agent to be imputed to a principal, an agency relationship must exist, an essential element of which is that the agent must "*act on the principal's behalf*." Restatement (Third) of Agency § 1.01 (2006) (emphasis added); *see also id.*

13

cmt. g. The agent must consent to act on the principal's behalf, as well as subject to the principal's control. *See id*. cmt. c.

The designated facts show that the relationship between the national fraternity and local fraternity involves the national fraternity offering networking opportunities and a brand to the local fraternity, along with providing aspirational goals and encouraging good behavior by individual members. It is not an agency relationship between principal and agent. Subject to retention of the right to suspend or revoke its affiliation with the local fraternity or its members, there is no evidence that the actual management and control over the resident members is a responsibility consensually exercised by the local fraternity as the agent and at the direction of and on behalf of the national fraternity. The conduct of the local fraternity in everyday management and supervision of the activities and conduct of its resident members is not undertaken on behalf of the national fraternity. This is not a matter upon which there is any dispositive issue of material fact, but rather an issue of law. There is no genuine issue of fact tending to show the existence of an agency relationship, and thus the actions of the local fraternity and its members cannot, as a matter of law, be imputed to the national fraternity under a theory of vicarious liability.

Accordingly, summary judgment in favor of the national fraternity is appropriate.

### 3. The Local Fraternity

The arguments of the local fraternity to support its motion for summary judgment mirror those of the national fraternity. To succeed, it must show that the undisputed designated evidence necessarily precludes Yost from establishing his claim that the local fraternity had a duty to supervise its members' conduct and to ensure their safety in the course of fraternity activities, and that Yost's injury resulted from such breach of these duties. When opposing the local fraternity's motion for summary judgment in the trial court, Yost argued that the local fraternity's duty of care arose not from the doctrine of *in loco parentis*, but rather "because it had a duty to supervise its members in fraternity activities and to make sure that such activities did not cross the line into hazing." Appellant's App'x at 404. On appeal, Yost repeatedly describes this duty as one "assumed" by the local fraternity. Appellant's Br. at 20, 21, 23. Yost does, however, introduce

14

his argument on this point by declaring that the local fraternity "*owed* or *assumed* a duty to Yost." *Id.* at 19 (emphasis added).

It is undisputed that at the time of Yost's injury he had been accepted as a pledge to the local fraternity and was living in the fraternity house where his injury occurred. The participants in the events that led to Yost's injury were active members of the fraternity, including Yost's "Pledge Father."[6] The local fraternity and Yost strongly dispute the reasonable inferences to be drawn from the designated evidence. Yost contends that his injury resulted during a fraternity group tradition or institutionalized activity, but the fraternity entities and Wabash urge that the incident was mere horseplay. Construing the designated evidence in favor of Yost, the non-moving party, we find the possibility of such group activity is not precluded. The local fraternity's rules and traditions arguably may have provided the active members of the fraternity with authority over the pledges, including Yost, and the exercise of such authority may have played a role in the events that led to Yost's injury. For instance, Yost's injury occurred when the local fraternity brothers attempted to forcibly place him in the shower, an act which resembles a celebratory tradition of the local fraternity.[7] Additionally, Yost's injury occurred shortly after Yost and his pledge brothers confronted some of the active members of the local fraternity in an attempt to toss one of these members, Yost's Pledge Father, into a nearby creek. This action was also a tradition of the local fraternity,[8] and one in which Yost and his pledge brothers had previously participated two other times the evening of his injury. The designated evidence further suggests that one of these attempts to "creek" an active member was done at the direction of the local fraternity's pledge trainer, the active member responsible for running the local fraternity's pledge program.

---

[6] The information provided to pledges of the local fraternity states that each pledge will choose a "Pledge Father" and describes the ideal selection as "a brother whom you respect and with whom you would feel comfortable discussing any problems that may arise." Appellant's App'x at 515. The duties of a "Pledge Father" include "assisting the pledge[']s social adjustment to the college and the chapter, reporting the pledge's progress towards initiation to the pledge educator, and ensuring that the pledge understands and fulfills the requirements for initiation." *Id.*

[7] Under the heading for the local fraternity's traditions, the information provided to pledges states: "Anyone having a birthday other than his 21st is to be thrown in the shower." *Id.* at 517.

[8] Also under the heading for the local fraternity's traditions, the information provided to pledges states: "Anyone reaching his 21st birthday or becoming engaged is thrown into Sugar Creek." *Id.*

15

To recover damages against the local fraternity in this negligence action, Yost must demonstrate he was owed a duty by the local fraternity, that this duty was breached, and that his injury was proximately caused by the breach of duty. Pfenning, 947 N.E.2d at 398. Here, Yost's argument is not that a conventionally recognized duty (such as a landowner's duty to an invitee or common carrier's duty to a passenger) existed, but rather that the local fraternity assumed a duty requiring the local fraternity to act with reasonable care. *See* Plan-Tech, Inc., 443 N.E.2d at 1219. As the above facts show, Yost was living at the local fraternity, subject to the mentorship of a Pledge Father from the local fraternity, participating in traditions maintained at the local fraternity, involved in the pledgeship program being run by local fraternity members, and, therefore, at least partially under the control and direction of the local fraternity. As to Yost's claim of assumed duty against the local fraternity, we again look to Restatement (Third) of Torts: Physical and Emotional Harm § 42. The undisputed designated evidence does not preclude the possibility that Yost may show at trial that the local fraternity undertook to render supervisory services intended to reduce the risk of harm to members like Yost, that upon which supervision Yost relied, and further that by failing to exercise reasonable care the local fraternity increased the risk of harm to Yost.

With respect to the local fraternity, against whom we find that Yost may pursue his claims, there remains the issue of punitive damages. Yost structured his amended complaint so that Count VI presented claims for punitive damages against all defendants, and the trial court separately addressed such claims, expressly granting summary judgment on the issue of punitive damages.

Unlike compensatory damages, which are intended to make the plaintiff whole, punitive damages "have historically been viewed as designed to deter and punish wrongful activity." Cheatham v. Pohle, 789 N.E.2d 467, 471 (Ind. 2003). In tort actions, "punitive damages may be awarded upon a showing of willful and wanton misconduct" such that "the defendant 'subjected other persons to probable injury, with an awareness of such impending danger and with heedless indifference of the consequences.'" Bud Wolf Chevrolet, Inc. v. Robertson, 519 N.E.2d 135, 136 (Ind. 1988) (quoting Orkin Exterminating Co. v. Traina, 486 N.E.2d 1019, 1023 (Ind. 1986), *abrogated on other grounds by* Bud Wolf, 519 N.E.2d at 137). Or where the defendant acted mali-

16

ciously, fraudulently, oppressively, or with gross negligence *and* the conduct was not the result of a "mistake of law or fact, honest error of judgment, overzealousness, mere negligence or other such noniniquitous human failing." *Id.* at 137 (quoting Travelers Indem. Co. v. Armstrong, 442 N.E.2d 349, 362 (Ind. 1982)). But punitive damages are not commonplace and rarely appropriate. The plaintiff has an especially heavy burden of proof at trial. The entitlement to punitive damages must be shown by clear and convincing evidence. *Id.*; *see also* Erie Ins. Co. v. Hickman, 622 N.E.2d 515, 520 (Ind. 1993).

Despite the high hurdle required for the award of punitive damages, we find that there remains a genuine issue of material fact as to whether punitive damages against the local fraternity may be awarded. The designated facts do not preclude the possibility that Yost's injury was the result of a continuous chain of events that were supervised and encouraged by the local fraternity under such circumstances as to warrant punitive damages. Summary judgment is therefore inappropriate with respect to Yost's claim for punitive damages against the local fraternity.

## Conclusion

We hold that the designated evidence shows that there is no genuine issue as to any material fact and that Wabash College and the national fraternity (Phi Kappa Psi Fraternity, Inc.) are each entitled to summary judgment as a matter of law, but that as to the local fraternity (Phi Kappa Psi Fraternity – Indiana Gamma Chapter at Wabash College), there remain genuine issues of material fact that preclude summary judgment. The judgment of the trial court is thus affirmed in part and reversed in part. This cause is remanded to the trial court for further proceedings.

David, Massa, and Rush, JJ., concur.
Rucker, J., concurs in part and dissents in part with separate opinion.

17

**Rucker, J., concurring in part and dissenting in part.**

I concur with that portion of the majority opinion reversing the trial court's grant of summary judgment in favor of the local fraternity, as well as affirming the trial court's grant of summary judgment in favor of the national fraternity. However, I disagree with my colleagues in affirming the trial court's grant of summary judgment in favor of Wabash College.

The majority is certainly correct in observing: "[I]n the absence of statute, covenant, fraud or concealment, a landlord who gives a tenant *full control and possession of the leased property* will not be liable for personal injuries sustained by the tenant or other persons lawfully upon the leased property." Slip op. at 5 (alteration in original) (emphasis added) (quoting Olds v. Noel, 857 N.E.2d 1041, 1044 (Ind. Ct. App. 2006) (quotation omitted)). The problem in this case however is that Wabash, as landlord and movant for summary judgment, presented no Rule 56 materials to the trial court demonstrating that it gave "full control and possession" of the leased property to its tenant—the local fraternity.

The majority is of the view that because Yost conceded that Wabash leased the fraternity house to the local fraternity, Wabash established that "the local fraternity as tenant thus had the exclusive right to possess and control the premises." Slip op. at 6. But the mere fact that the local fraternity leased the premises does not *ipso facto* establish that Wabash gave the local fraternity "full control and possession of the leased property." The question is whether the terms of the lease reflect such an arrangement. See, e.g., Pitcock v. Worldwide Recycling, Inc., 582 N.E.2d 412, 414 (Ind. Ct. App. 1991) (declaring Landlords not liable for injuries sustained by the invitees where "[t]he one year written lease agreement . . . indicates, among other things, that Landlords surrendered to Tenant complete control and possession of the entire premises"). Here as the movant for summary judgment Wabash did not submit the lease agreement as a part of its evidentiary materials. So we have no way of knowing the terms and conditions of the lease. Indeed it may or may not even speak to this point. Just as important, Wabash did not tender an affidavit declaring that it gave the local fraternity "full control and possession of the premises." Assuming no contrary evidence this simple submission would have put the matter to rest. As it

now stands there was simply nothing before the trial court and thus nothing before this Court on this critical issue.

The party seeking summary judgment has the initial burden of proving the absence of a genuine issue of material fact as to an outcome-determinative issue. Jarboe v. Landmark Cmty. Newspapers of Ind., Inc., 664 N.E.2d 118, 123 (Ind. 1994). Only then must the non-movant come forward with contrary evidence demonstrating the existence of genuine factual issues that should be resolved at trial. Id. It appears plain to me that Wabash as the moving party failed to carry its initial burden of demonstrating that it gave the local fraternity full control and possession of the leased fraternity house. Simply declaring the existence of a lease is not enough. Thus, Yost had no duty to come forward with contrary evidence.

It bears repeating that as a landowner Wabash owed Yost—an invitee—"a duty to exercise reasonable care for his protection" while on Wabash's premises. Pfenning v. Lineman, 947 N.E.2d 392, 406 (Ind. 2011) (quotation omitted). And this duty includes "tak[ing] reasonable precautions to prevent foreseeable criminal acts against invitees." L.W. v. W. Golf Ass'n., 712 N.E.2d 983, 985 (Ind. 1999). A landowner is relieved of this duty where it "gives a tenant full control and possession of the leased property[.]" Olds, 857 N.E.2d at 1044. Because Wabash in my view has not carried its burden of proof on this outcome-determinative issue, the trial court's grant of summary judgment cannot be sustained on grounds that Wabash owed Yost no duty. On this point I respectfully dissent and would reverse the judgment of the trial court. In all other respects I concur with the majority opinion.

2